# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

AMANDA R.,[1]

              Plaintiff,

    v.

ANDREW M. SAUL,[2]
Commissioner of Social Security,

              Defendant.

Case No. 8:19-cv-00447-MAA

**MEMORANDUM DECISION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER**

On March 6, 2019, Plaintiff filed a Complaint seeking review of the Social Security Commissioner's final decision denying her application for a period of disability and disability insurance benefits pursuant to Title II of the Social Security Act. This matter is fully briefed and ready for decision. For the reasons discussed below, the Commissioner's final decision is affirmed, and this action is dismissed with prejudice.

---

[1]  Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2]  The Commissioner of Social Security is substituted as the Defendant pursuant to Federal Rule of Civil Procedure 25(d).

**PROCEDURAL HISTORY**

On October 24, 2014, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability beginning on August 1, 2010. (Administrative Record [AR] 30, 181-88.)  Plaintiff alleged disability because of depression, anxiety, high blood pressure, and left arm pain.  (AR 66-67.)  After her application was denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 113-14.)  At a hearing held on October 3, 2017, at which Plaintiff appeared with counsel, the ALJ heard testimony from Plaintiff and a vocational expert.  (AR 44-65.)

In a decision issued on November 20, 2017, the ALJ denied Plaintiff's application after making the following findings pursuant to the Commissioner's five-step evaluation.  (AR 30-39.)  Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of August 1, 2010 through her date last insured of December 31, 2014.  (AR 32.)  She had severe impairments consisting of "depression; hypertension; myoligamentous strain of the cervical spine, bilateral knees and hands and feet; and lumbar spine degenerative disc disease, post surgery, by history." (*Id*.)  She did not have an impairment or combination of impairments that met or medically equaled the requirements of one of the impairments from the Commissioner's Listing of Impairments.  (AR 33-34.) She had a residual functional capacity for a range of light work.  (AR 34.)  She could no longer perform her past relevant work as waitress or order puller.  (AR 37-38.)  She could perform other work in the national economy, in the occupations of assembler of electrical parts and basket filler.  (AR 39.)  Thus, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.  (*Id*.)

On January 11, 2019, the Appeals Council denied Plaintiff's request for review.  (AR 1-6.)  Thus, the ALJ's decision became the final decision of the Commissioner.

///

**DISPUTED ISSUE**

The parties raise the following disputed issue: whether the ALJ properly evaluated the opinion of Dr. Zaret, a treating physician.  (ECF No. 21, Parties' Joint Stipulation ["Joint Stip."] at 4.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's final decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied.  *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).  Substantial evidence means "more than a mere scintilla" but less than a preponderance.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Lingenfelter*, 504 F.3d at 1035.  Where evidence is susceptible of more than one rational interpretation, the Commissioner's interpretation must be upheld.  *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

**DISCUSSION**

**A.     Legal Standard.**

A treating physician's opinion is entitled to special weight because he or she is "most able to provide a detailed, longitudinal picture" of a claimant's medical impairments and bring a perspective to the medical evidence that cannot be obtained from objective medical findings alone.  *See* 20 C.F.R. § 404.1527(c)(2); *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).  "The treating physician's

opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2).

If the treating physician's opinion is uncontroverted by another doctor's opinion, it may be rejected only for "clear and convincing" reasons. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If a treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. *See id*. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751 (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

Here, Dr. Zaret's opinion was controverted by the opinions of two examining physicians (AR 295-96, 321-22) and four non-examining state agency physicians (AR 75, 76-78, 91, 92-94). Thus, the ALJ was required to state specific and legitimate reasons based on substantial evidence in the record before rejecting Dr. Zaret's opinion.

**B.    Background.**

Dr. Zaret treated Plaintiff as her primary care physician beginning in approximately 2010. (AR 312.) He treated her for multiple conditions that included bronchitis (AR 300); back pain (AR 311); wrist pain (AR 304); high blood pressure (AR 306); and depression and anxiety (AR 301, 301, 303, 307). Beginning in late 2014, Dr. Zaret referred Plaintiff for mental health treatment. (AR 300, 301.) Plaintiff was unable to obtain mental health treatment from Dr. Zaret's referral because it had a two-year waiting list, but she eventually was able to

see a therapist beginning in 2017.  (AR 53-54.)  Dr. Zaret passed away approximately one year before the administrative hearing was held in October 2017.  (AR 53.)

In April 2015, Dr. Zaret submitted an opinion entitled "Physical Medical Source Statement."  (AR 312-15.)  He based the opinion on Plaintiff's depression, with symptoms of crying and suicidal thoughts.  (AR 312.)  With respect to the presence of pain, he wrote, "NA."  (*Id.*)  Based on Plaintiff's condition, Dr. Zaret stated that Plaintiff was limited, during an eight-hour workday, to two hours of sitting and less than two hours of standing or walking.  (AR 313.)  He also wrote that Plaintiff's problems with concentration required a rest period every hour for five to ten minutes (*id.*), that she could lift no more than ten pounds occasionally (AR 314), that she would be "off task" for 25 percent or more of the workday (AR 315), that she was incapable of even "low stress work" (*id.*), and that she would be absent from work more than four days per month (*id.*).

The ALJ gave "little weight" to Dr. Zaret's opinion about Plaintiff's limitations for the following reasons:

> These limitations were based solely on [Plaintiff's] diagnosis of depression.  The undersigned gives little weight to Dr. Zaret's opinion because it is overly restrictive and unsupported in light of the minimal objective evidence at the hearing level, which conveys minimal findings and largely routine and conservative treatment for [Plaintiff's] alleged physical and mental impairments.

(AR 37.)

The ALJ also gave greater weight to the opinion of Dr. Guellich, an examining orthopedist who had stated that Plaintiff could perform a range of light work.  (AR 36; *see also* AR 321-22.)  The Court reviews the ALJ's assessment of Dr. Zaret's opinion, including the ALJ's decision to give greater weight to Dr. Guellich's opinion.

**C.     Analysis.**

    **1.     Dr. Zaret (Treating Physician).**

The Court construes the ALJ's reasoning above as stating three reasons for giving little weight to Dr. Zaret's opinion.  The Court addresses each reason in turn.  As discussed below, two of the three reasons were specific and legitimate reasons based on substantial evidence.

    **a.     Based solely on Plaintiff's diagnosis of depression.**

The ALJ first stated that Dr. Zaret's assessed limitations "were based solely on [Plaintiff's] diagnosis of depression."  (AR 37.)

Dr. Zaret's opinion, as described above, stated that Plaintiff's limitations were based on symptoms from depression (such as crying and suicidal thoughts), but that pain was not applicable as a symptom.  (AR 312.)  Further, based on the depression, Dr. Zaret stated that Plaintiff had both strength-based limitations (*e.g.*, limitations in lifting, sitting, standing, and walking) and mental limitations (*e.g.*, a deficit in concentration that would require hourly rest for five to ten minutes).  (AR 313-14.)  Thus, Dr. Zaret imposed limitations that were both exertional (strength-based) and nonexertional (not strength-based).  *See* 20 C.F.R. § 404.1569a (defining exertional and nonexertional limitations, and noting that pain can be both).

With respect to the strength-based, exertional limitations, the ALJ legitimately could have questioned how Dr. Zaret had arrived at such limitations solely from Plaintiff's symptoms of depression, which did not include pain.  *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("The functional limitations caused by anxiety, depression, concentration, and memory impairments are nonexertional limitations."); *Perez v. Secretary of Health and Human Services*, 958 F.2d 445, 447 (1st Cir. 1991) ("An anxiety condition is not, of course, an exertional impairment.").  Dr. Zaret did not offer any medical basis for the extreme

1    exertional limitations he assessed.  Thus, this was a specific and legitimate reason
2    based on substantial evidence to give little weight to Dr. Zaret's opinion.

3

4                    **b.    Minimal objective evidence.**

5          The ALJ next stated that Dr. Zaret's opinion was "overly restrictive and
6    unsupported in light of the minimal objective evidence at the hearing level."  (AR
7    37.)

8          An ALJ may discredit a treating physician's opinion that is "unsupported by
9    the record as a whole" or unsupported "by objective medical findings."  *Batson v.*
10   *Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir.
11   2004) (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992), and
12   *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)).  However, the ALJ
13   must specifically explain how the medical record fails to support the treating
14   physician's opinion.  *See Embrey v. Bowen*, 849 F.2d 418, 421 ("To say that
15   medical opinions are not supported by sufficient objective findings or are contrary
16   to the preponderant conclusions mandated by the objective findings does not
17   achieve the level of specificity our prior cases have required[.]").

18         Here, the ALJ gave two explanations.  First, the ALJ explained that Dr.
19   Zaret's own treatments notes "do not reveal any significant mental status
20   abnormalities outside of [Plaintiff's] subjective complaints of depression and
21   anxiety."  (AR 36.)  Second, the ALJ explained that "the minimal mental health
22   records at the hearing level" showed that Plaintiff's daily activities and social
23   functioning "appeared to be largely intact"; that she was taking oral psychotropic
24   medications "without any history of decompensation"; and that her cognitive
25   functioning was "largely intact."  (AR 37 [discussing evidence that included a
26   psychiatric examination at AR 292-96].)

27         These explanations were supported by substantial evidence and were
28   sufficiently specific to constitute a legally sufficient reason, based on lack of

support by the medical record as a whole, to accord little weight to Dr. Zaret's opinion.  *See Batson*, 359 F.3d at 1195.  First, Dr. Zaret's own treatment record, as the ALJ explained, conveyed "minimal findings" (AR 37) and no "significant mental status abnormalities" (AR 36).  The record contained no evidence that Dr. Zaret conducted any clinical interviews or mental status examinations.  Indeed, when asked to provide clinical findings and objective signs to support his opinion, Dr. Zaret responded only, "Pt depressed."  (AR 312.)  Second, other parts of the record at the hearing level, as the ALJ explained, showed that Plaintiff's functioning appeared to be largely intact, that she had no history of decompensation with medication, and that her cognitive functioning was largely intact.  (AR 292-96.)  Based on this evidence and the ALJ's explanation of it, this was a specific and legitimate reason based on substantial evidence to give little weight to the treating physician's opinion.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (upholding an ALJ's rejection of a treating physician's opinion that was "inconsistent with the medical records" and "did not mesh with [the claimant's] objective data or history").

### c.    Largely routine and conservative treatment.

The ALJ finally stated that Dr. Zaret's opinion was overly restrictive and unsupported in light of "largely routine and conservative treatment for [Plaintiff's] alleged physical and mental impairments."  (AR 37.)  An ALJ may reject a treating physician's opinion that a claimant is disabled where the treating physician had prescribed a conservative course of treatment.  *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).  Here, the ALJ explained that Plaintiff's treatment was conservative for both her physical and mental impairments.  (AR 35, 36.)  However, neither explanation was a specific and legitimate reason based on substantial evidence.

///

For the physical impairments (*i.e.*, Plaintiff's back problem), the ALJ cited evidence that Plaintiff was prescribed only chiropractic services, physical therapy, and routine medication for blood pressure management.  (AR 35.)  The primary evidence for this reason, however, does not exist.  The ALJ cited evidence that was redacted from the record because it belonged to a different claimant.  (AR 35 [citing AR 290-91].)  Accordingly, substantial evidence did not exist to support the ALJ's reasoning that Dr. Zaret's opinion was inconsistent with conservative treatment for Plaintiff's physical impairments.

For the mental impairments (*i.e.*, Plaintiff's depression and anxiety), the ALJ explained that "the evidence does not convey any longitudinal history of formal mental health treatment or inpatient hospitalization for acute psychiatric decompensation."  (AR 36.)  Plaintiff explained, however, that she could not follow through on Dr. Zaret's mental health referral because it had a two-year waiting list.  (AR 53.)  Before dismissing treatment as conservative, an ALJ must account for evidence that additional treatment is unavailable.  *See Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).  Because the ALJ did not account for this context, the conservative nature of Plaintiff's mental health treatment was not a specific and legitimate basis to reject Dr. Zaret's opinion.

In sum, the nature of Plaintiff's treatment, for either her physical or mental impairments, did not amount to a legally sufficient reason to give little weight to Dr. Zaret's opinion.

### d.    conclusion.

The ALJ stated two reasons that were specific and legitimate reasons based on substantial evidence to give little weight to Dr. Zaret's opinion.  Although the third reason was not specific and legitimate, it was harmless error.  *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (an error is harmless where it is "inconsequential to the ultimate nondisability determination"); *Monta v. Saul*, 776

F. App'x 473, 474 (9th Cir. 2019) (ALJ's erroneous reasoning in rejecting a medical opinion was harmless when other reasons were specific and legitimate).

Plaintiff further contends that the ALJ did not properly consider Dr. Zaret's opinion under the factors set forth in 20 C.F.R. § 404.1527(c)(2)-(6).  (Joint Stip. at 9.)  These factors include "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).  An ALJ "is not required to make an express statement that she considered all the factors outlined" in that regulation but rather, her decision need only contain some indication that the factors were properly considered.  *See Kelly v. Berryhill*, 732 F. App'x 558, 562 n.4 (9th Cir. 2018).

Here, the ALJ's opinion contained adequate indications that the regulatory factors were considered in assessing the treating physician's opinion.  The ALJ twice acknowledged Dr. Zaret's status as Plaintiff's primary care treating physician.  (AR 36, 37.)  More importantly, the ALJ explained the supportability and consistency of Dr. Zaret's opinion compared to the medical record as a whole.  (AR 35-37.)  Accordingly, reversal is not warranted on this basis.

### 2.    Dr. Guellich (Examining Physician).

Finally, as noted, the ALJ gave greater weight to the opinion of Dr. Guellich than to that of Dr. Zaret.  (AR 36.)  Dr. Guellich was an examining orthopedist who concluded that Plaintiff could perform a range of light work.  (AR 321-22.)

"[W]hen an examining physician provides 'independent clinical findings that differ from the findings of the treating physician,' such findings are 'substantial evidence.'"  *Orn*, 495 F.3d at 632 (citing *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985)).  "Independent clinical findings can be either (1) diagnoses that differ from those by another physician and that are supported by substantial evidence, or

(2) findings based on objective medical tests that the treating physician has not herself considered." *Orn*, 495 F.3d at 632 (internal citations omitted).

Here, Dr. Guellich provided independent clinical findings based on his findings from objective medical tests that Dr. Zaret had not himself considered. Dr. Guellich performed an orthopedic evaluation that included a neurological test and physical tests of Plaintiff's musculoskeletal system, cervical spine, thoracolumbar spine, and hands and feet. (AR 318-20.) In comparison, Dr. Zaret's treatment notes reveal an examination of Plaintiff's left wrist (AR 304) but little else by way of objective medical testing. The ALJ was entitled to give greater weight to Dr. Guellich's opinion in these circumstances. *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (holding that an ALJ was entitled to favor the opinion of an examining physician who had relied on independent clinical findings, *i.e.*, the results of his own neurological examination and objective clinical tests, which differed from the findings of the treating physician). Thus, the ALJ did not err in giving greater weight to examining physician's opinion than to the treating physician's opinion.

## ORDER

It is ordered that Judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this action with prejudice.

DATED:  May 07, 2020

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE